UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARLON BERNIER, WILFREDO RAMOS,
CARLOS SIERRA and JOSE FRANCISCO
LABORIEL, individually and on behalf of
others similarly situated,

        Plaintiffs,

  -against-

GARD RECYCLING, INC., DRC GROUP,
INC., BEVERAGE CONTAINER
RECYCLING CORPORATION,
GUASTAVO RODRIGUEZ and ALEX
DOLJANSKY,

        Defendants.

Case No.:

**COMPLAINT**

**Collective Action and Class Action
Complaint**

Plaintiffs MARLON BERNIER, WILFREDO RAMOS, CARLOS SIERRA and JOSE
FRANCISCO LABORIEL ("Plaintiffs"), individually and on behalf of others similarly situated,
by and through their attorneys, FISHER TAUBENFELD LLP, allege against Defendants GARD
RECYCLING, INC., DRC GROUP, INC., BEVERAGE CONTAINER RECYCLING
CORPORATION ("Corporate Defendants"), GUASTAVO RODRIGUEZ and ALEX
DOLJANSKY (the "Individual Defendants") as follows:

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b)
(Fair Labor Standards Act), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331
(original federal question jurisdiction). Supplemental jurisdiction over the New York State law
claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendants conduct business in this District, and the Corporate Defendants reside in this District.

## THE PARTIES

**CORPORATE DEFENDANT DRC GROUP, INC.**

3.      Upon information and belief, Defendant DRC Group, Inc. is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains a principal place of business at: (i) 494 Hunts Point Ave., Bronx, NY 10474; and (ii) 1381 Oak Point Ave., Bronx, NY 10474.

4.      At all times relevant to this Complaint, Defendant DRC Group, Inc.: (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

5.      At all times relevant to this Complaint, Defendant DRC Group, Inc. was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees who were similarly situated to Plaintiffs.

6.      At all times relevant to this Complaint, Defendant DRC Group, Inc. was and is an employer within the meaning of the 29 U.S.C. 201 et seq. and NYLL Section 190(3), and employed employees who were similarly situated to Plaintiffs.

7.      Defendant DRC Group, Inc. possessed substantial control over employees who were similarly situated to Plaintiffs, including in working conditions, and over the policies

and practices with respect to the employment and compensation of Plaintiffs and all similarly situated individuals referred to herein.

8.      Defendant DRC Group, Inc. had the power to control the terms and conditions of Plaintiffs' employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

**CORPORATE DEFENDANT BEVERAGE CONTAINER RECYCLING CORPORATION**

9.      Upon information and belief, Defendant Beverage Container Recycling Corporation is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains a principal place of business at: (i) 494 Hunts Point Ave., Bronx, NY 10474; and (ii) 1381 Oak Point Ave., Bronx, NY 10474.

10.      At all times relevant to this Complaint, Defendant Beverage Container Recycling Corporation: (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

11.      At all times relevant to this Complaint, Defendant Beverage Container Recycling Corporation was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees who were similarly situated to Plaintiffs.

12.      At all times relevant to this Complaint, Defendant Beverage Container Recycling Corporation was and is an employer within the meaning of the 29 U.S.C. 201 et seq. and NYLL Section 190(3), and employed employees who were similarly situated to Plaintiffs.

13.     Defendant Beverage Container Recycling Corporation possessed substantial control over employees who were similarly situated to Plaintiffs, including in working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs and all similarly situated individuals referred to herein.

14.     Defendant Beverage Container Recycling Corporation had the power to control the terms and conditions of Plaintiffs' employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

**CORPORATE DEFENDANT GARD RECYCLING, INC.**

15.     Upon information and belief, Defendant Gard Recycling, Inc. is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains a principal place of business at: (i) 4010 Park Ave., Bronx, NY 10357; and (ii) 15 Vermilyea Ave., # 42, New York, NY 10034.

16.     At all times relevant to this Complaint, Defendant Gard Recycling, Inc.: (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

17.     At all times relevant to this Complaint, Defendant Gard Recycling, Inc. was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees who were similarly situated to Plaintiffs.

18.     At all times relevant to this Complaint, Defendant Gard Recycling, Inc. was and is an employer within the meaning of the 29 U.S.C. 201 et seq. and NYLL Section 190(3), and employed employees who were similarly situated to Plaintiffs.

19.     Defendant Gard Recycling, Inc. possessed substantial control over employees who were similarly situated to Plaintiffs, including in working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs and all similarly situated individuals referred to herein.

20.     Defendant Gard Recycling, Inc. had the power to control the terms and conditions of Plaintiffs' employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

**DEFENDANTS CONSTITUTE JOINT EMPLOYERS**

21.     Defendants own, operate and/or control the recycling facilities located at: (i) 494 Hunts Point Ave., Bronx, NY 10474; (ii) 1381 Oak Point Ave., Bronx, NY 10474 (i.e., DRC Recycling); and (iii) 4010 Park Ave., Bronx, NY10457 (i.e., Gard Recycling, Inc.).

22.     Defendants operated their various corporate entities as an integrated enterprise. Upon information and belief, the Individual Defendants owned them and they were run by the same management. Employees, including Plaintiffs, worked for more than entity, sometimes simultaneously, and the entities shared equipment and supplies.

23.     For example, employees of Gard Recycling, Inc. drove trucks marked with the DRC Group, Inc. logo.

24.     The Individual Defendants possess operational control over the Corporate Defendants, possess an ownership interest in the Corporate Defendants, and control significant functions of the Corporate Defendants.

25.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

26.     At all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203.

27.     Plaintiffs and Defendants' other employees regularly handled and used tools and equipment that were moved in or produced for interstate commerce.

28.     At all relevant times hereto, Plaintiffs were engaged in interstate "commerce" within the meaning of the FLSA.

29.     Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

30.     At all relevant times hereto, Defendants have employed "employee[s]," including Plaintiffs.

31.     At all relevant times hereto, Defendants have been Plaintiffs' employers within the meaning of the New York Labor Law ("NYLL") §§ 2 and 651.

32.     Each Plaintiff is an adult individual who has been employed by Defendants within the last six (6) years.

33.     Upon information and belief, the Individual Defendants reside in the State of New York and are owners, managers, and/or employees of the Corporate Defendant.

34.     The Individual Defendants make and/or made hiring and firing, scheduling, and payroll decisions and maintain pay records on behalf of the Corporate Defendants.

35.     The Individual Defendants are natural persons engaged in business in the State of New York, who are sued individually in their capacity as owners, agents, employees or officers of the Corporate Defendants.

36.     The Individual Defendants exercise operational control over the Corporate Defendants' operations.

37.     At all relevant times, all Defendants have been Plaintiffs' employers within the meaning of the FLSA and NYLL.

38.     The Individual Defendants created and enforced policy for the Corporate Defendants, including the employee pay policies and work schedules. Personnel and operational decisions were made or approved by the Individual Defendants.

39.     The Individual Defendants are Plaintiffs' employers under the FLSA and NYLL and are individually liable to Plaintiffs.

40.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

41.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

42.     In the alternative, Defendants constitute a single employer of Plaintiff and/or similarly situated individuals.

43.     Upon information and belief, the Individual Defendants operate the Corporate Defendants as either an alter ego of themselves, and/or fails to operate the Corporate Defendants as entities legally separate and apart from themselves, by, among other things:

    i.   failing to adhere to the corporate formalities necessary to operate the Corporate Defendants as separate and legally distinct entities;

ii. defectively forming or maintaining the Corporate Defendants, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

iii. transferring assets and debts freely as between all Defendants;

iv. operating the Corporate Defendants for their own benefit as the majority shareholders;

v. operating the Corporate Defendants for their own benefit and maintaining control over it as closed corporations or closely controlled entities;

vi. intermingling assets and debts of their own with the Corporate Defendants;

vii. diminishing and/or transferring assets of the Corporate Defendants to protect their own interests; and

viii. other actions evincing a failure to adhere to the corporate form.

## **NATURE OF THE ACTION**

44.    Plaintiffs bring this action on behalf of (a) themselves and other similarly situated employees who have worked for the Defendants on or after the date that is three (3) years before the filing of this Complaint pursuant to the FLSA; and (b) themselves and other similarly situated employees on or after the date that is six (6) years before the filing of this Complaint pursuant to the NYLL and the New York Commissioner of Labor's Wage Orders codified at 12 N.Y.C.R.R. 142 *et seq.*, based upon the following acts and/or omissions:

i. Defendants' failure to pay overtime compensation required by federal and state law and regulations to Plaintiffs who worked in excess of forty (40) hours per week;

ii. Defendants' failure to pay the required New York State minimum wage;

iii.   Defendants' failure to provide Plaintiffs with a wage notice or proper paystubs as required by NYLL § 195; and

iv.   Defendants' retaliation against Plaintiff Bernier for making complaints related to unlawful pay practices.

## FACT ALLEGATIONS

45.     At all times relevant hereto, Defendants have committed the following acts and/or omissions intentionally and willfully, with knowledge that they have been violating federal and state laws and that Plaintiffs have been and continue to be economically injured.

46.     Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

***Plaintiff Bernier's Schedule and Pay***

47.     Plaintiff Bernier worked for Defendants from October 22, 2021 until November 10, 2022.

48.     Plaintiff Bernier worked as a driver for Defendants, picking up and delivering recyclable materials.

49.     Plaintiff Bernier was scheduled to work from Monday through Saturday, 8:00 a.m. until 4:00 p.m.

50.     However, Plaintiff Bernier often worked past 4:00 p.m., and sometimes as late as 10:00 p.m.

51.     Defendants would often require Plaintiff Bernier and other workers to stay past their scheduled end time, stating that "[we] decide when you go home."

52.     Plaintiff Bernier consistently worked 48-55 hours per week.

53.     Plaintiff Bernier did not receive any breaks, and would often have just five minutes per day to eat.

54.     For this work, Defendants paid Plaintiff Bernier $800 per week.

55.     Defendants sporadically gave Plaintiff Bernier an additional $100.

56.     Defendants failed to provide Plaintiff Bernier with a paystub or any other documentation of his pay.

57.     Defendants failed to keep time records or require Plaintiff Bernier to track or report his hours.

58.     Defendants told Plaintiff that he had to be paid "off the books."

59.     Defendants failed to pay Plaintiff Bernier an overtime premium of time-and-a-half for each of his overtime hours.

### Plaintiff Ramos' Schedule and Pay

60.     Plaintiff Ramos worked for Defendants in 2017 and 2018, and then again starting in or around October 2019.

61.     Plaintiff Ramos is employed by Defendants as a warehouse worker.

62.     Between October 2019 and summer 2021, Plaintiff Ramos worked six days per week, from 8:00 a.m. until between 5:00 and 6:00 p.m. on weekdays and from 8:00 a.m. until 4:00 p.m. on Saturdays.

63.     Plaintiff Ramos therefore consistently worked more than 40 hours per week between October 2019 and Summer 2021.

64.     Between Summer 2021 and the present, Mr. Ramos has worked six days per week from 8:00 a.m. until 4:00 p.m. each day.

65.     For this work, Defendants pay Plaintiff Ramos a weekly salary of $580.

66. Defendants have therefore failed to pay Plaintiff Ramos the required New York State minimum wage of $15 per hour.

67. Plaintiff Ramos was paid entirely in cash until approximately May 2022, then partially in cash and partially by check.

68. Defendants failed to pay Plaintiff Ramos an overtime premium of time-and-a-half for each of his overtime hours.

### Plaintiff Sierra's Schedule and Pay

69. Plaintiff Sierra worked for Defendants from the beginning of 2021 until in or around September 2022.

70. Plaintiff Sierra was employed by Defendants as a truck driver but also took on some warehouse work.

71. Plaintiff Sierra was scheduled to work six days per week, Mondays through Saturdays, from 8:00 a.m. until 4:00 p.m., but often ended up working until at least 6:00 p.m. and sometimes as late as 9:00 p.m.

72. Plaintiff Sierra therefore consistently worked more than 40 hours per week.

73. For this work, Defendants paid Plaintiff Sierra a weekly salary of $780, entirely in cash.

74. Defendants failed to pay Plaintiff Sierra an overtime premium of time-and-a-half for each of his overtime hours.

### Plaintiff Laboriel's Schedule and Pay

75. Plaintiff Laboriel has worked for Defendants for over seven years.

76. Plaintiff Laboriel is employed by Defendants as a warehouse worker.

77.     Plaintiff Laboriel is scheduled to work six days per week, Mondays through Saturdays, from 8:00 a.m. until 4:00 p.m.

78.     For this work, Defendants pay Plaintiff Laboriel a weekly salary of $450 per week, entirely in cash.

79.     Defendants are therefore failing to pay Plaintiff Laboriel at the New York State minimum wage of $15 per hour.

80.     Defendants are also failing to pay Plaintiff Laboriel an overtime premium of time-and-a-half for each of his overtime hours.

### Retaliation against Plaintiff Bernier

81.     In September 2022, Plaintiff Bernier noticed that his paycheck was $200 less than expected.

82.     Plaintiff Bernier confronted Defendant Doljansky about the reduction in his pay.

83.     Defendant Doljansky replied noncommittally to Plaintiff Bernier's complaint and did not provide an explanation, saying only that "times are tough right now."

84.     Plaintiff Bernier also complained on several occasions to Defendants Doljansky and Rodriguez about not being paid overtime.

85.     In response, Defendant Rodriguez would occasionally pay Plaintiff Bernier an additional $100, but Defendants never regularly paid Plaintiff Bernier at the required overtime rate.

86.     Defendants terminated Plaintiff Bernier on November 10, 2022.

87.     Defendant Rodriguez claimed Plaintiff Bernier was being terminated because they could not afford his pay.

88.     However, Defendant Doljanksy gave Plaintiff Bernier a different reason for his termination, claiming it was performance-based.

89.     The reasons Defendants provided to Plaintiff Bernier for his termination were pretextual.

90.     Plaintiff Bernier was terminated in retaliation for his complaints and questions about pay.

### Defendants' Violations of NYLL § 195

91.     Defendants have failed to provide Plaintiffs with a wage notice in compliance with NYLL § 195.

92.     Defendants did not at any time provide Plaintiffs with a notice specifying their rate of pay, the basis of pay, allowances, if any, claimed against the minimum wage (e.g., tips, meals, lodging) or the identification of their regular pay day.

93.     Defendants also failed to provide Plaintiffs with proper wage statements stating, among other things, the number of overtime hours they worked or their hourly rate for overtime hours.

## COLLECTIVE ACTION ALLEGATIONS

94.     Defendants' failure to comply with the FLSA extended beyond the Plaintiffs to all other similarly situated employees insofar as Defendants had a policy to pay below the State minimum wage and to fail to pay their employees at one and a half times their regular rate for the hours they worked in excess of 40.

95.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated current and former non-exempt employees of Defendants pursuant to 29 U.S.C. § 216(b).

96.    The consent to sue forms for Plaintiffs are attached hereto as **Exhibit 1**.

97.    Upon information and belief, there are at least 40 current and former employees who have been denied proper overtime wage compensation while working for Defendants.

98.    At all relevant times, Plaintiffs and others who are and/or have been similarly situated, were paid by Defendants in similar ways, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the statutorily required overtime compensation for hours worked in excess of forty (40) per workweek.  The claims of Plaintiffs stated herein are similar to those of the other employees.

99.    In bringing this action, Plaintiffs are representative of and are acting on behalf of the interests of other current and former non-exempt employees who have worked for Defendants within the last three (3) years.

## CLASS ACTION ALLEGATIONS UNDER FED.R.CIV.P.23(b)(3) FOR VIOLATIONS OF THE NYLL

100.    Plaintiffs bring this action on behalf of themselves and all other non-exempt persons who were or are employed by the Defendants but who did not receive compensation required by the NYLL in respect to their work for the Defendants.

101.    Upon information and belief, this class of persons consists of no fewer than 40 employees, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed.R.Civ.P.23(a)(1).

102.    There are questions of law and fact common to the class, which predominate over any questions affecting only individual members, specifically: whether the employment of

Plaintiffs by the Defendants is subject to the jurisdiction and the wage and overtime requirements of the NYLL.

103.   The claims of Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

104.   Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

105.   A class action is superior to the other available methods for the fair and efficient adjudication of the controversy under the standards of Fed.R.Civ.P.23(b)(3).

106.   Plaintiffs bring the second through fifth claims for relief herein on behalf of themselves and all other persons similarly situated as a class action pursuant to Fed.R.Civ.P.23, in respect to all claims that Plaintiffs and all persons similarly situated have against the Defendants as a result of the Defendants' violations under the NYLL.


**FIRST CLAIM FOR RELIEF**
**(Overtime Wage Violations under the FLSA as to All Plaintiffs)**

107.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

108.   Throughout the statute of limitations period covered by these claims, Plaintiffs and others similarly situated regularly worked in excess of forty (40) hours per workweek.

109.   At all relevant times hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay Plaintiffs and others

similarly situated at one and a half times their regular rate of pay for all hours of work in excess of forty (40) hours per workweek, and willfully failing to keep required records, in violation of the FLSA.

110.    Plaintiffs seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
**(Overtime Wage Violations under NYLL as to All Plaintiffs)**

111.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

112.    New York law prohibits an employer from permitting an employee to work without paying overtime wages for all hours worked in excess of forty (40) in any workweek.

113.    Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly and repeatedly have failed to pay Plaintiffs and others similarly situated at the required overtime rates, one and a half times their regular rate of pay, for hours worked in excess of forty (40) per workweek.

114.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (NYLL Minimum Wage Violations
### as to Plaintiffs Ramos and Laboriel)

115.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

116.    New York law requires an employer to pay all employees a minimum wage of no less than $15.00 per hour for all New York City employers as of December 31, 2018.

117.    Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiffs Ramos and Laboriel at the required minimum wage rate.

118.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (NYLL Failure to Notify as to all Plaintiffs)

119.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

120.    Pursuant to §195(1) of the NYLL, within ten business days of Plaintiffs and other similarly situated employees' hiring, Defendants were obligated to provide them with a notice describing, *inter alia*, their hourly regular and overtime rates of pay.

121.    Pursuant to §195(3) of the NYLL, Defendants were required to provide to Plaintiffs and others similarly situated a wage statement containing, *inter alia*, a record of each overtime hour worked and the employee's overtime rate of pay.

122.    Defendants failed to provide Plaintiffs and others similarly situated with a notice or proper wage statements in accordance with §195 of the NYLL.

123.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seek damages in accordance with §198 of the NYLL for each week Defendants failed to provide such notice and wage statement, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### (NYLL Retaliation as to Plaintiff Bernier)

124.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

125.    Defendants retaliated against Plaintiff Bernier for complaining about illegal pay practices, an activity protected under the NYLL.

126.    By the acts and practices described herein, Defendants intentionally and willfully violated the NYLL by retaliating against Plaintiff.

127.    As a proximate result of Defendants' unlawful retaliation, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

128.    As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## SIXTH CLAIM FOR RELIEF
### (FLSA Retaliation as to Plaintiff Bernier)

129.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

130.    By the acts and practices described herein, Defendants intentionally and willfully violated the FLSA by retaliating against Plaintiff Bernier.

131.    Defendants knew that their actions constituted retaliation and willfully disregarded Plaintiff's statutorily protected rights.

132.    Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate result of Defendants' retaliatory practices, unless and until this Court grants the relief hereinafter described.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment for:

A. Compensatory Damages in an amount to be determined at trial;

B. Prejudgment Interest;

C. Liquidated Damages pursuant to the FLSA and NYLL;

D. Plaintiffs' costs and reasonable attorneys' fees; and

E. Any relief the Court deems just and proper.

Dated:  January 30, 2023
        New York, New York

                                        Respectfully submitted,

                                        *Michael Taubenfeld*
                                        Michael Taubenfeld
                                        FISHER TAUBENFELD LLP
                                        225 Broadway, Suite 1700
                                        New York, New York 10007
                                        Phone: (212) 571-0700
                                        Facsimile: (212) 505-2001
                                        *ATTORNEYS FOR PLAINTIFFS*

Exhibit 1

## <u>CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT</u>

I am an individual who was formerly employed by GARD RECYCLING, INC. and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by me in this case.

Wilfredo Ramos
_____
NAME

_____
SIGNATURE

## <u>CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT</u>

I am an individual who was formerly employed by GARD RECYCLING, INC. and/or related

entities.  I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound

by the terms of the Professional Services Agreement signed by me in this case.


Carlos Sierra
_____
NAME
_____
SIGNATURE

DocuSign Envelope ID: BD6354D9-40B4-4937-8CE3-6211453476BC

## <u>CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT</u>

I am an individual who was formerly employed by GARD RECYCLING, INC. and/or related

entities.  I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound

by the terms of the Professional Services Agreement signed by me in this case.


Marlon Bernier
_____
NAME

_____
SIGNATURE

## **CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT**

I am an individual who was formerly employed by GARD RECYCLING, INC., GUASTAVO

RODRIGUEZ and ALEX DOLJANSKY and/or related entities.  I consent to be a plaintiff in an

action to collect unpaid wages.  I agree that I am bound by the terms of the Professional Services

Agreement signed by me in this case.

Jose Francisco Laboriel
_____
NAME

_Jose Francisco Laboriel_
_____
SIGNATURE

1/23/2023
_____
DATE


I hereby declare that I am fluent in both the Spanish and English languages and that English
translation of the above Consent to Sue form is a true translation of the Spanish Consent to Sue
form signed by Jose Francisco Laboriel.

_Estephany Herrera_
_____
ESTEPHANY HERRERA

DocuSign Envelope ID: 5FB75C2D-B42F-4GA6-82C6-00934E74E418

## AUTORIZACIÓN PARA DEMANDAR BAJO LA LEY FEDERAL DE NORMAS

## RAZONABLES DE TRABAJO

Soy un individuo que fue empleado de GARD RECYCLING, INC., GUASTAVO RODRIGUEZ y ALEX DOLJANSKY, o de entidades relacionadas. Autorizo ser demandante en una acción para recolectar sueldos impagos. Acepto cumplir con lostérminos del Contrato de Prestación de Servicios Profesionales que firmé para este caso.

Jose Francisco Laboriel
_____
NOMBRE

*Jose Francisco Laboriel*
_____
FIRMA

1/23/2023
_____
FECHA